[Docket Nos. 5 and 14]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

TF YACHTS, LLC,

        Plaintiff,

        v.

VANDUTCH PRODUCTION &
DEVELOPMENT B.V. et al.

        Defendants.

Civil No. 20-8044(RMB/JS)

**OPINION**

APPEARANCES:

JACOBS & BARBONE
By:  Louis M. Barbone, Esq.
1125 Pacific Avenue
Atlantic City, NJ 08401
        *Attorney for Plaintiff*

MCNELLY LAW OFFICES
By:  Beth R. Stearns, Esq.
36 Fowler Drive
West Orange, NJ 07052
        *Attorney for Defendants*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Before the Court is Plaintiff TF Yachts, LLC's ("Plaintiff"

or "TF Yachts") Motion for an Order to Show Cause to Issue a

Preliminary Injunction. [Docket No. 5]. Specifically, Plaintiff

seeks a Preliminary Injunction against Defendants to prohibit

the "transfer, sale, conveyance, or other disposition of any and

all corporate assets of Van Dutch Production & Development B.V.

and Van Dutch Yachts USA, Inc." [Id.]. For the reasons stated herein, the Court will deny Plaintiff's motion.

In addition, Defendants have filed a Motion to Dismiss Defendants Frank Mulder, Jacobus Anko Mast, Bas Mulder (the "Individual Defendants"), and VanDutch USA, Inc. ("VDI") for Lack of Personal Jurisdiction, and to Dismiss Three Counts of the Complaint for Failure to State a Claim. [Docket No. 14]. For the reasons stated herein, the Court will grant Defendants' motion.

## I.    BACKGROUND

This dispute arises from a manufacturing agreement. On April 12, 2018, Defendant VanDutch Production and Development B.V. ("VDP") entered into an agreement with non-party VanDutch Production, LLC for the manufacturing and construction of yachts in Egg Harbor City, NJ. [See Docket No. 1-2, at ¶ 12]. About one year after later, VanDutch Production LLC assigned its rights, interests, and obligations under the agreement to Plaintiff, TF Yachts[1]. [Id. at ¶ 16]. VanDutch Production LLC was "specifically created" for the manufacturing agreement and otherwise has no affiliation with VDP or VDI. [Id. at ¶ 2]. Instead VanDutch Productions LLC is more closely affiliated with TF Yachts- TF

---

[1]    Plaintiff contends that VDP consented to this assignment, but VDP contests this point. [See Docket No. 10, at 3].

Yachts is managed by Ira Trocki, and VanDutch Production LLC was managed by Ira's son, Daniel Trocki. [Id. at ¶¶ 3-4].

According to the complaint, the manufacturing agreement provided that the yachts would be "manufactured and produced at the facility of TF Yachts in Egg Harbor City, New Jersey for a five-year period." [Id. at ¶ 12]. Upon inspection of Plaintiff's manufacturing facilities, however, representatives from VDP informed plaintiff that the facility did not meet the required standards. [Id. at ¶ 13]. VDP then agreed to pay half of the renovation costs. [Id. at ¶ 12]. During this renovation process, Plaintiff explains that its "performance was entirely frustrated for a period of approximately six months[,]" because VDP did not deliver the yacht molds. [Id. at ¶ 13]. Plaintiff contends that it completed the renovations, began hiring new employees, and relied on promises from VDP for the training of the new workers, but was still unable to begin manufacturing yachts due to the delay in receiving the molds. [Id.]. Plaintiff further contends that, as of April 2019, it had notified VDP of its failure to make payments on Plaintiff's billing invoices. [Id.]. Shortly thereafter, Plaintiff informed VDP it was in breach of the agreement. [Id. at ¶ 12-14].

Plaintiff then alleges that, to settle the dispute, Defendant offered $480,000.00 as part of a "Confidential Settlement Agreement." [Id. at ¶ 17]. This purported settlement

also contained a renewed manufacturing agreement. Plaintiff contends that both VDP and Plaintiff fully accepted this offer, and that VDP officers had repeatedly acknowledged VDP's obligations under the agreement. [Id.]. According to the Complaint, VDP later "declared to [Plaintiff] that while it remains contractually indebted . . . and agreed to pay $480,000, it has no intent to satisfy its debt, and instead intends to transfer . . . corporate assets to a third party for the purpose of avoiding and extinguishing its legal obligations to [Plaintiff]." [Id.].

The Complaint alleges five counts: (1) Breach of Contract against VDP; (2) Conspiracy to Commit and Fraudulent Conveyance of Corporate Assets against VDP and the Individual Defendants; (3) Breach of the Covenant of Good Faith and Fair Dealing against VDP; (4) Fraud and Deceit against VDP and the Individual Defendants; and (5) Promissory Estoppel against VDP and the Individual Defendants[2]. In June 2020, Plaintiff filed this action in the Superior Court of New Jersey, Atlantic County, Civil Division, and VDP removed to this Court. [Docket No. 1].

---

[2]    As discussed more thoroughly below, Plaintiff contends that VDI is not truly a separate entity from VDP. Therefore, the Court presumes that Plaintiff's claims against VDP are also asserted against VDI.

## II.  __ANALYSIS__

Although Plaintiff's motion [Docket No. 5] concerns preliminary injunctive relief, the Court must first resolve issues concerning personal jurisdiction. On August 7, 2020, Defendants filed a Motion to Dismiss pursuant to 12(b)(2) and 12(b)(6). [Docket No. 14]. After Defendants filed this motion, the Court permitted the parties to conduct discovery for the purpose of resolving the personal jurisdiction issue. The Court held multiple status conferences and instructed the parties to file supplemental briefing once the jurisdictional discovery period had ended. The parties have filed those briefs [Docket Nos. 30 and 31], and the Court will now resolve all pending motions.

### A. Personal Jurisdiction

Defendants challenge personal jurisdiction as to the Individual Defendants, and VDI. [Docket No. 14]. They contend that the Individual Defendants have not "purposely availed" themselves of New Jersey and have no contacts with the state in their personal capacities. The Individual Defendants are foreign nationals. They further contend that neither the Individual Defendants nor VDI were parties to the manufacturing agreement, and that VDI has no connection with either this lawsuit or the state of New Jersey.

In response, Plaintiff argues that it has established personal jurisdiction over these Defendants for two reasons. It contends that it properly completed substituted service of process on each Defendant by serving VDI in Florida and that these Defendants "maintain more than minimum contacts in the State of New Jersey." [Docket No. 24, at 13]. For the reasons discussed below, the Court rejects Plaintiff's arguments.

In assessing whether the Court has personal jurisdiction over a defendant, it must undertake a two-step inquiry. IMO Indus., Inc. v. Kiekert, AG, 155 F.3d 254, 259 (3d Cir. 1998). First, the Court must use the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. Id. Second, the Court must apply principles of due process. Id. Once a defendant "raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). To satisfy this burden, a plaintiff "need only establish a prima facie case of personal jurisdiction." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). But a plaintiff cannot meet this burden "on the bare pleadings alone," and instead "must respond with actual proofs, not mere allegations." Patterson by Patterson v. F.B.I., 893 F.2d 595, 604 (3d Cir. 1990).

In New Jersey, "the first step [of the personal jurisdiction analysis] collapses into the second because New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. <u>Al-Ghena Int'l Corp. v. Radwan</u>, 957 F. Supp. 2d 511, 528 (D.N.J. 2013) (internal quotation marks omitted) (citing N.J. Ct. R. 4:4-4(c)). Personal jurisdiction is proper if a defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 437 (3d Cir.1987) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)). Once a party challenges personal jurisdiction, the plaintiff "must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." <u>Provident Nat. Bank</u>, 819 F.2d at 437.

To evaluate specific jurisdiction[3], the Court relies on a three-part inquiry: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation

---

[3]    General jurisdiction is not asserted against the challenged Defendants.

arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). This test does not require a defendant's physical presence in the state, nor does it require "the bulk of harm" to occur within the forum. See Al-Ghena Int'l Corp., 957 F. Supp. 2d at 528.

When, as here, a plaintiff attempts to establish personal jurisdiction over an individual defendant for his or her actions as a corporate officer, the Court must evaluate additional factors. In general, "an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity." Ragner Tech. Corp. v. Berardi, 287 F. Supp. 3d 541, 552 (D.N.J. 2018). Instead, "actions taken by a defendant in his or her 'corporate capacity' may only be used to establish personal jurisdiction over the defendant where those actions tend to establish individual liability." Collins v. James W. Turner Constr., Ltd, No. CV162877FLWLHG, 2017 WL 210236, at *8 (D.N.J. Jan. 18, 2017). Therefore, a plaintiff must "establish[ ] that the individual defendant himself took the specific action[,]" before "actions taken in the forum by the corporate entity [can] be imputed to an individual defendant for purposes of personal

8

jurisdiction[.]" <u>Norben Imp. Corp. v. Metro. Plant & Flower Corp.</u>, No. CIV.A. 05-54 (JCL), 2005 WL 1677479, at *5 (D.N.J. July 15, 2005).

Here, Plaintiff asserts four grounds for establishing minimum contacts. It alleges that the Individual Defendants: (1) communicated with Plaintiff by phone and email, (2) personally appeared at Plaintiff's facility in New Jersey, (3) signed the manufacturing agreement, and (4) "made specific factual representations throughout the course of their individual contacts with the plaintiff in New Jersey." [<u>See</u> Docket No. 31, at 10-11]. The problem with these arguments, however, is that Plaintiff has failed to provide any "actual proofs" that the Individual Defendants performed these actions in either their personal capacities or in a manner that establishes their individual liability. Instead, Plaintiff's own statements largely reveal the opposite- that the Individual Defendants routinely interacted with Plaintiff only in their roles as officers of VDP.

Indeed, the parties do not appear to dispute that the Individual Defendants came to Plaintiff's New Jersey facility and signed the manufacturing agreement only in their corporate capacities. Plaintiff acknowledges that "the defendant's principal corporate officers, namely Frank Mulder and Anko Mast[,] came to Plaintiff[']s Egg Harbor City manufacturing

facility to inspect it." [Docket No. 24, at 14]. Plaintiff continues: "both Bas and Frank Mulder appeared personally at the Egg Harbor City facility on at least two occasions, the first at the commencement of the manufacturing agreement and then thereafter to inspect the facility as well as inspect the production process and speak directly with principals at plaintiff's facility." [Docket No. 31, at 11]. But these arguments show only that the Individual Defendants' actions in New Jersey were performed in their corporate capacities. Similarly, there is no argument that the Individual Defendants signed the manufacturing agreement as anything but officers and representatives of VDP.

Moreover, Plaintiff's fraud claims against the Individual Defendants are largely, if not entirely, unrelated to their inspections of the facility and their signatures on the agreement. The Complaint states that the fraud claims are either related to June 2019 settlement negotiation or occurred "between April of 2019 [and] the filing of [the] complaint." [See Docket No 1-2, at ¶¶ 16-17, 21, 37]. Yet the signing of the manufacturing agreement and the inspection of Plaintiff's facility occurred more than one year before Plaintiff alleges that any fraud began for which Plaintiff asserts personal jurisdiction. Moreover, Plaintiff does not allege that the Individual Defendants committed any fraud while in New Jersey.

10

On this record, Plaintiff has not established personal jurisdiction over the Individual Defendants.

Plaintiff's remaining two arguments- that personal jurisdiction is established by the Individual Defendants' e-mail and telephone conversations with Plaintiff, and by Defendants' "specific factual representations" to Plaintiff- similarly fail. There is little doubt that Plaintiff had various conversations with the Individual Defendant throughout 2018, 2019, and 2020. Yet Plaintiff has failed to show that any of these communications were performed either outside of the Individual Defendants' corporate capacities, or that individual, personal liability attaches to these communications. Instead, Plaintiff relies on conclusory statements that these conversations "formed the basis of Counts asserting personal liability." [See Docket No. 31, at 11]. As noted above, these bare allegations are insufficient. See Patterson by Patterson, 893 F.2d at 604.

The Court is satisfied that these conversations establish personal jurisdiction over VDP, but that is uncontested. Plaintiff has not, however, established personal jurisdiction over the Individual Defendants. Instead, Plaintiff's arguments and the discovery on the issue of personal jurisdiction, reveal that the Individual Defendants availed themselves of New Jersey only as corporate representatives for VDP, and Plaintiff failed to sufficiently allege any conduct giving rise to their

individual, personal liability. The Court provided Plaintiff with ample opportunity to request documents and other information that would establish claims against the Individual Defendants, and it was unable to do so.

Finally, Defendants challenge personal jurisdiction of VDI. VDP is a foreign corporation based in the Netherlands, and VDI is a separate entity and Florida Corporation. [See Docket Nos. 14-6 & 30, at 2-3]. Plaintiff seemingly suggests that these two corporations are actually the same. For example, Plaintiff makes several references to the VanDutch website, which states both that its U.S. headquarters are in Florida and that VanDutch manufacturers yachts in New Jersey. [See e.g., Docket No. 30, at 3-4]. But this argument does not establish that the two entities are one in the same. Instead, the record before the Court clearly shows that VDI is a separate entity from VDP, that VDI was not a party to the manufacturing agreement, and that Plaintiff has provided no "actual proofs" that this Court has personal jurisdiction over this Defendant. Accordingly, the Court finds that it lacks personal jurisdiction over the Individual Defendants and over Defendant VDI.

B. Preliminary Injunction

Plaintiff requests "the entry of a Preliminary Injunction against the defendants prohibiting defendants from the transfer, sale, conveyance[,] or other disposition of any and all

corporate assets of VanDutch Production & Development, B.V. and Van Dutch Yachts USA, Inc [and] a Writ of Attachment against property of the defendant currently housed at the plaintiff's manufacturing facility." [Docket No. 5]. For the reasons stated below, the Court will deny this motion.

The Court will issue a preliminary injunction only if certain criteria are met. A preliminary injunction is an "extraordinary remedy, which should be granted only in limited circumstances." Ferring Pharms., Inc. v. Watson Pharms., Inc., 765 F.3d 205, 210 (3d Cir. 2014). As the moving party, Plaintiff must establish that (1) it is likely to succeed on the merits of its claims, (2) it is likely to suffer irreparable harm without relief, (3) the balance of harms favors Plaintiff, and (4) relief is in the public interest. Issa v. Sch. Dist. of Lancaster, 847 F.3d 121, 131 (3d Cir. 2017); see also Tracey v. Recovco Mortg. Mgmt. LLC, 451 F. Supp. 3d 337, 341 n.2 (D.N.J. 2020) ("In deciding a motion for a preliminary injunction, a district court applies the federal, not state, standard.... This is true even in a diversity case."). The first two factors are "gateway factors" that are "most critical," and must be met before the Court will consider the remaining two factors. Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017). If Plaintiff fails "to establish any element in its favor . . . a preliminary injunction

13

inappropriate." NutraSweet Co. v. Vit-Mar Enterprises, Inc., 176 F.3d 151, 153 (3d Cir. 1999).

Plaintiff makes several arguments in support of its motion but fails to establish irreparable harm. This dispute is largely a breach of contract case concerning monetary damages. According to the Complaint, Plaintiff agreed to settle its dispute with VDP for $480,000.00, and it believes that VDP is bound to this agreement. [Docket No. 1-2]. Although VDP's purported breach of that settlement and Plaintiff's belief that it would enter a new manufacturing agreement with VDP[4] further complicates the issue, Plaintiff cannot simultaneously claim that it was prepared to settle its disputes with VDP for money, and that VDP's breach has caused irreparable harm that money alone cannot fix. A monetary dispute "does not automatically preclude the finding of irreparable injury," United Steelworkers of Am., AFL-CIO v. Fort Pitt Steel Casting, Div. of Conval-Penn, Div. of Conval Corp., 598 F.2d 1273, 1280 (3d Cir. 1979), but the remaining facts here do not support a finding of irreparable injury.

Moreover, the Court cannot find that Plaintiff has established a likelihood of success on the merits. Allegations are insufficient to obtain preliminary injunctive relief, "particularly where injunctive relief alters the status quo."

---

[4]    Plaintiff concedes that the parties had not signed a second manufacturing agreement. [See Docket No. 1-2, at ¶ 16].

Tracey, 451 F. Supp. 3d at 342. Plaintiff must instead show that its chance of success is "significantly better than negligible but not necessarily more likely than not." Id. (citing Reilly, 858 F.3d at 179. Under these standards, Plaintiff's arguments fail.

With little more than bare allegations, Plaintiff asserts that VDP's sale of various assets to Cantiere Del Pardo, SPA, an Italian yacht manufacturer, was finalized "for the purpose of avoiding and extinguishing its legal obligations to the plaintiff." [Docket No. 1-2, at ¶ 17]. Similarly, Plaintiff alleges that VDP made various assurances, over the course of about 14 months, intending to induce Plaintiff's reliance until its sale to Cantiere Del Pardo had been completed. [See Docket No. 5-3]. These arguments, however, do not show a likelihood of success on the merits, and, instead, are conclusory and unsubstantiated allegations. At this point in the proceedings, Plaintiff has not provided any proof beyond conclusory allegations.

To that end, Plaintiff clearly believes that VDP breached the manufacturing agreement, fraudulently misrepresented its intentions, sold assets to avoid debts, and is obligated to pay Plaintiff significant sums. VDP contents these points. But more importantly, Plaintiff's position would require this Court to make far too many unreasonable inferences- particularly for its

15

claim that VDP sold assets to avoid its purported debt to Plaintiff- and credibility determinations in its favor before finding that Plaintiff has a likelihood of success on the merits. The Court is unwilling to do this, and the available record does not support that Plaintiff's will likely succeed on its claims. This is not to say that Plaintiff is incapable of providing sufficient facts and succeeding on its claims, only that it has not met its burden here.

Thus, the Court concludes that Plaintiff has failed to establish both irreparable and immediate harm, and a likelihood of success on the merits. Having found that Plaintiff failed to establish either of the two "gateway" factors, the Court will not address the remaining two. Similarly, the Court will deny Plaintiff's request to prohibit the removal of Defendants' property from its facility on the same grounds.

C. Failure to State a Claim

Defendants seek to dismiss Counts One and Three of the Complaint as to the Individual Defendants and VDI, as well as Counts Two, Four, and Five as to all Defendants. Having found that the Court lacks personal jurisdiction over the Individual Defendants and VDI, the Court will dismiss all claims against these Defendants. In addition, and for the reasons discussed below, the Court will grant Defendants' motion as to Counts Two, Four and Five.

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). The Court may consider only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of

17

the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing Chester Cnty. Intermediate Unit v. Penn. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

Count Two alleges that VDP conspired to and fraudulently conveyed corporate assets in violation of N.J.S.A. 25:2-25, the Fraudulent Transfer Act. The Fraudulent Transfer Act is intended "to prevent a debtor from placing his or her property beyond a creditor's reach." Gilchinsky v. Nat'l Westminster Bank N.J., 159 N.J. 463, 475 (1999). To determine whether a transfer constitutes a fraudulent conveyance[5], the Court must engage in two inquires: (1) whether the debtor has put some asset beyond the reach of creditor, which would have been available to them at some point in time, but for the conveyance; and (2) whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor. Id. at 475-76.

The Court finds that Plaintiff has failed to state a claim under The Fraudulent Transfer Act. The Complaint does not sufficiently allege that VDP's agreement with Cantiere Del Pardo put relevant assets beyond Plaintiff's reach. Moreover, Plaintiff is entitled only to "reasonable inferences," Bistrian,

---

[5]    Confusingly, Plaintiff responded to VDP's recitation of this standard by claiming that "Defendant applies the incorrect standard." [Docket No. 24, at 19]. Yet, on the very next page of its brief, Plaintiff clearly cites Gilchinsky and quotes this exact same standard. [Id. at 20].

696 F.3d at 358, and it would be unreasonable- based on the allegations in the Complaint- to infer that VDP's transfer of assets to Cantiere Del Pardo was done with "an intent to defraud, delay, or hinder" Plaintiff. The Complaint contains no support for the allegation that VDP "intends to transfer all of its property, assets and value by selling %100 of the VanDutch corporate assets," or that this alleged sale would thereby "extinguish[] [VDP's] legal obligations to the plaintiff." [Docket No. 1-2, at ¶ 17]. Similarly, the Complaint states that VDP's

> factual representations were false, and made for the purpose of inducing plaintiff's reliance upon them so that the contractual obligations and delinquencies of the defendant could be held in abeyance so as to effect and accomplish a sale of all assets of the defendant and thereby hinder, delay[,] and defraud the plaintiff as a creditor of the defendant.

[Id. at ¶ 28]. Yet these "'naked assertions' devoid of 'further factual enhancement'" are insufficient to establish a claim. See Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Therefore, the Court will grant the Motion to Dismiss as to Count Two without prejudice to amend.

Count Four alleges that VDP committed common law fraud and deceit. Under New Jersey law, a plaintiff must prove: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an

19

intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages" to establish a claim for fraud. <u>Banco Popular N. Am. v. Gandi</u>, 184 N.J. 161, 172-73 (2005).

The Court finds that Plaintiff has failed to state a claim for common law fraud and deceit. Like the above, this Count suffers from issues of conclusory allegations, naked assertions, and unreasonable inferences. These problems alone warrant dismissal. In addition, Plaintiff's primary arguments are seemingly that an unsigned settlement agreement and an unsigned second manufacturing agreement establish both VDP's material misrepresentations and Plaintiff's reasonable reliance on those misrepresentations. Moreover, Plaintiff states that its resulting damages are that it "has suffered substantial, extensive[,] and continuing economic damage." [Docket No. 1-2, at ¶ 38].

These arguments do not establish fraud under New Jersey law. Plaintiff has not sufficiently alleged that its settlement negotiations with VDP were anything more than an unsuccessful negotiation, or that it suffered damages for anything other than VDP's purported breach of contract. In addition, Plaintiff cannot claim that VDP had agreed to a $480,000.00 settlement, when the only evidence of a settlement in the Complaint is (1) an unsigned agreement and (2) an e-mail from VDP's counsel that

specifically mentions "resolv[ing] open issues" and refers to the unsigned agreements as "drafts." [See Docket No. 1-2, at Ex. H]. Accordingly, the Court will grant the Motion to Dismiss as to Count Four without prejudice to amend.

Count Five alleges a Promissory Estoppel claim. Under New Jersey law, a plaintiff must establish four elements to maintain a claim of promissory esttopel. Those four elements are "(1) a clear and definite promise; (2) made with the expectations that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Mendez v. Port Auth. of New York & New Jersey, No. CV 14-7543 (ES), 2017 WL 1197784, at *12 (D.N.J. Mar. 31, 2017) (citing Toll Bros. v. Bd. of Chosen Freeholders, 194 N.J. 233, 253 (2008)). The most important element of this test is the "clear and definite promise" requirement. Id. An indefinite promise, or a promise subject to change by the promisor is not clear and definite and "cannot give rise to a claim for promissory estoppel." Id.; see also Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat. Bank, 163 N.J. Super. 463, 479 (App. Div. 1978).

The Court finds that Plaintiff has failed to state a claim for promissory estoppel. Plaintiff argues that VDP made "clear and definite promises to the plaintiff that it was paying and settling its outstanding debt with the plaintiff by directing its attorney to draft a settlement agreement and affirmatively

represent its agreement to pay the gross sum of $480,000."
[Docket No. 24, at 25] [quoting Docket No. 1-2, at ¶ 40]. But as
noted above, the Complaint does not sufficiently allege that VDP
made any such "clear and definite promise," and the Complaint's
exhibits suggest the opposite. Plaintiff's e-mail from VDP's
attorney clearly shows that the agreements had not been
finalized. [See Docket No. 1-2, at Ex. H]. If VDP did make a
clear and definite promise, Plaintiff needed to allege that fact
with far more particularity than it has in the Complaint, and it
needed to address the open-ended nature of the e-mail from VDP's
counsel.

Similarly, Plaintiff has failed to show, under the Twombly
and Iqbal standards, that VDP's purported promise was made with
any expectation of inducing Plaintiff's reliance, that Plaintiff
reasonably relied on any such purported promise, or that the
purported damages on its promissory estoppel claim are any
different than the damages it allegedly suffered due to VDP's
breach of contract. Instead, the Complaint shows an unsuccessful
settlement negotiation, Plaintiff's attempts to negotiate a
settlement before filing its lawsuit, and damages arising only
for a purported breach of contract. Accordingly, the Court will
grant the Motion to Dismiss as to Count Five without prejudice
to amend.

### III. **CONCLUSION**

Thus, for the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction is DENIED. Defendants' Motion to Dismiss the Individual Defendants and VanDutch USA, Inc. for Lack of Personal Jurisdiction is GRANTED. Defendants' Motion to Dismiss Counts Two, Four, and Five of the Complaint is GRANTED. An appropriate Order accompanies this Opinion.


Dated: February 22, 2021        s/Renée Marie Bumb
                                RENÉE MARIE BUMB
                                United States District Judge